UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**TARIQ KYAM,**

          **Plaintiff,**

          v.

**ESSEX CTY. PROSECUTORS OFFICE, et al.,**

          **Defendants.**

Civil Action No. 15-4436 (ES)

OPINION

---

**SALAS, DISTRICT JUDGE**

    Plaintiff Tariq Kyam, ("Plaintiff"), a pre-trial detainee confined at Union County Jail in Newark, New Jersey at the time of filing, sought to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court previously granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk of the Court to file the Complaint. (D.E. No. 6).

    At this time, the Court must review the Amended Complaint (D.E. No. 10 ("Am. Compl.")[1] Plaintiff subsequently filed, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court will dismiss the Amended Complaint in its entirety.

---

[1] Although Docket Entry No. 10 is docketed as an application for leave to file an amended complaint, a review of this submission reveals that this is, in fact, the amended complaint Plaintiff seeks to proceed on.

**I. BACKGROUND**

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following Defendants: (1) Marquise Carter, Michael DeMaio, Louis Carrega, Gary Farrow, John Doe #1, Jose Ramirez—all of whom are homicide detectives with the Essex County Prosecutor's Office; (2) John Doe #2, chief of the Essex County Prosecutor's Office; (3) Cheryl Cucinello and Erica Liu—both assistant prosecutors with the Essex County Prosecutor's Office; and (4) David Fate, an "admitted liar and opportunist." (*See* Am. Compl. ¶ 4). The following factual allegations are taken from the Amended Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

On February 26, 2009, Defendants Carter, Carrega and DeMaio arrested Plaintiff on charges of murder and several armed robberies. (Am. Compl. ¶ 6). Plaintiff was placed in an interview room at the Essex County Prosecutor's Office, where he was repeatedly struck in the face, head and body by Defendants DeMaio and Carrega. (*Id.*). At some point, Plaintiff was taken to the bathroom, where he was then punched by Defendant John Doe #1 (who Plaintiff describes and claims he can identify if seen again). (*Id.*). After returning to the interview room, Defendants Carrega and DeMaio continued to strike Plaintiff in the face, body, legs, feet and head, as Plaintiff covered himself and yelled for help. (*Id.*). Defendant John Doe #2 (who Plaintiff describes and claims he can identify if seen again) then entered the room and told Plaintiff to be quiet and, after he left the room, the assaults ceased. (*Id.*). While Plaintiff was being escorted out of the office, a witness in the case entered the room and Defendant Ramirez instructed Plaintiff not to look at her. (*Id.*). Plaintiff then looked at the woman's hair ("sticking out from under the coat") and Defendant Ramirez grabbed Plaintiff by the back of the head and slammed his head

into the door twice. (*Id.*). "Plaintiff was then booked into the Essex County Jail on the allegations of murder and a string of armed robbery's [sic]." (*Id.*).

During the course of his case, Plaintiff has learned that Defendant Carter used other detectives to conduct photo arrays with witnesses and victims in Plaintiff's case, but he instructed that the audio and video recordings were only to be turned on after Plaintiff's photo was selected. (*Id.*). Plaintiff alleges that on February 26, 2009, Defendant Carter also instructed Defendant Farrow to download a copy of a surveillance video of one of the robberies in its entirety. (*Id.*).

On March 3, 2009, Defendant Carter arrested another individual in connected with the robberies, Defendant Fate. (*Id.*). Defendant Fate gave an audio recorded statement at that time, wherein he admitted that he and Plaintiff were "participants in all of the cases he was asked about on the recording." (*Id.*). Plaintiff alleges that Defendants Carter knew some of the information was not accurate, but he failed to correct Defendant Fate. (*Id.*). On March 13, 2009, Plaintiff alleges that Defendant Fate gave a second statement to Defendant Carter—which also incriminated Plaintiff and contained information that Defendant Carter knew to be untrue. (*Id.*). Plaintiff alleges that Defendant Carter visited Defendant Fate several times when Fate was in the Essex County Jail, during "which the two held various discussions about the cases and crimes" concerning Plaintiff's case. (*Id.*).

During the time period of October through December 2009, Defendants Cucinello and Carter made presentations to the grand jury which contained allegations which they knew—or should've known—to be false. (*Id.*). Plaintiff also alleges that, prior to February 9, 2011, Defendant Fate entered into an "enormously beneficial guilty plea agreement" with the prosecutors in exchange for his truthful testimony against Plaintiff. (*Id.*). During his guilty-plea colloquy on that same date, Defendant Fate provided additional facts about Plaintiff which prosecutors knew—

or should've known—were lies. (*Id.*). Sometime in 2012-2013, during appearances in state court for his criminal proceeding, Plaintiff learned (among other things) that one of the recordings which had been turned over to his defense counsel showed that Plaintiff was not involved in one of the robberies that he was accused of committing. (*Id.*). During his February 2014 trial, Plaintiff alleges that a video recording of one of the robberies was deliberately edited and altered to erase the one person on the recording who was supposedly identified as Plaintiff, while leaving other portions of the video intact. (*Id.*).

Plaintiff is seeking certain declaratory relief and monetary damages. (*See* Am. Compl. ¶ 7).

## II. DISCUSSION

### A. Legal Standard

#### 1. Standards for a *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[2], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (alteration added).

**2. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Analysis**[3]

**1. Excessive Force**

At the outset, the Court notes that it can raise the issue of the statute of limitations sua sponte at this screening stage. *See Ostuni v. WaWa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013) (per curiam) ("Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint sua sponte under § 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim") (citing *Fogle v. Peirson*, 435 F.3d 1252, 1258 (10th Cir. 2006)); *Hunterson v. Disabato*, 244 F. App'x 455, 457 (3d Cir. 2007) (per curiam) ("[A] district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915A(b) (l) where it is apparent from the complaint that the applicable statute of limitations has run.").

For claims arising under 42 U.S.C. § 1983, state law generally governs the statute of limitations and whether the limitations period should be tolled.[4] *See Kreider v. Philhaven*

---

[3] The Court notes that Plaintiff lists five causes of action in his Amended Complaint. (*See* Am. Compl. at 26.) However, based on the factual allegations in the Amended Complaint, the Court can only identify two claims: excessive force and malicious prosecution. If there are other claims he intended to raise, Plaintiff should so advise in any second amended complaint.

[4] New Jersey statutes set forth certain bases for "statutory tolling." *See, e.g.*, N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law also permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *See Miranda v. Police Dep't of Atl. City*, No. 08-2013, 2008 WL 2235601, at *3 (D.N.J. May 29, 2008) (citing *Freeman v. State*, 347 N.J. Super. 11, 31 (App. Div.) certif. denied, 172 N.J. 178 (2002)).

*Adolescent Inpatient Treatment Ctr.*, 592 F. App'x 59, 60 (3d Cir. 2014) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). New Jersey's two-year limitations period on personal injury actions, N.J.S.A. § 2A:14–2, governs claims under § 1983. *See, e.g.*, *Montgomery v. DeSimone*, 159 F.3d 120, 126 & n. 4 (3d Cir. 1998); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). Federal law governs the date of accrual, and a claim accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Kreider*, 592 F. App'x at 60 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)) (internal quotation marks and citations omitted).

Plaintiff has alleged that in February 2009, Defendants Carter, Carrega, DeMaio, John Doe #1, John Doe #2 and Ramirez either directly participate in assaulting him, or witnessed the assaults and did not intervene. (*See* Am. Compl. ¶ 6). Because Plaintiff was aware of his injury on the day of the assault, his excessive force claim and/or failure-to-intervene claims accrued on February 26, 2009. *See Ostuni*, 532 F. App'x at 112 (excessive force claim typically accrues on the date of the assault because at that point plaintiff has reason to know of the injury); *Brown v. Buck*, 614 F. App'x 590, 592 (3d Cir. 2015) (same). As a result, even giving him the benefit of the date when he filed his original Complaint in May 2015, Plaintiff's excessive-force claims were still raised

---

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. *See Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. *Id.* n. 9. "The Court of Appeals for the Third Circuit has held that 'equitable tolling is extraordinary, and we extend it only sparingly.'" *Gunset v. Marsh*, No. 12-4735, 2013 WL 706195, at *3 (D.N.J. Feb. 25, 2013) (quoting *Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (citations omitted)).

well beyond the expiration of the two-year statute of limitations period. There does not appear to be any basis for statutory or equitable tolling on the face of the Amended Complaint and therefore the Court will dismiss these claims *without prejudice* at this time. Plaintiff may raise any relevant bases for tolling in a second amended complaint.

**2. Malicious Prosecution**

With regard to Plaintiff's remaining factual allegations, it appears that he is attempting to raise a malicious prosecution claim.[5]

To state a § 1983 malicious prosecution claim, Plaintiff must set forth facts indicating:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Woodyard v. Cty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) (citing *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009)). "[T]he favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a

---

[5] To the extent Plaintiff intended to raise a separate falsification-of-evidence claim based on the allegation that the surveillance tape of the February 21st robbery was edited, *see Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016) ("a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged"), Plaintiff failed to provide sufficient facts under *Iqbal*. Without identifying which of the Defendants allegedly altered the tape, Plaintiff contends that upon viewing the tape during jury selection, it was "immediately clear and obvious to him" that the recording had been edited to deliberately erase the person on the tape who had been identified as Plaintiff. (Am. Compl. ¶ 6). However, Plaintiff provides no information as to how he knew it was edited, especially since he also acknowledges that this was the first time he had viewed the tape. (*Id.*). Moreover, it does not appear that absent this alleged "fabricated evidence," Plaintiff would not have been charged since the tape did not even show him, or the person who was supposed to be him. His sparse allegations on this issue are therefore insufficient to state a falsification-of-evidence claim at this time.

8

whole." *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009). When a plaintiff is "acquitted of some charges and convicted of others, [the Court] must determine whether 'the offenses as stated in the statute and the underlying facts of the case . . . indicate that the judgment as a whole' reflects the [Plaintiff's] innocence." *Kiriakidis v. Borough of Vintondale*, 609 F. App'x 713, 717 (3d Cir. 2015) (quoting *Kossler*, 564 F.3d at 188).

Here, Plaintiff has failed to allege the favorable termination prong of a malicious prosecution claim. Plaintiff states that "the Defendants, with the assistance of David Fate, have taken Plaintiff through 2 trials in 2014 on the murder charges . . . which did not convince these two jurys [sic] that Plaintiff was at all guilty of the crimes charged and presented." (Am. Compl. ¶ 6). While this statement certainly suggests that juries failed to convict Plaintiff on the charges which were pending against him, he then further states that he has been unable to "meaningfully apply his substantive rights to prove to a jury that [he] was completely exculpated from the false accusation's [sic] and false identification's [sic]." (*Id.*). These statements read together are confusing and it is not immediately clear whether he was acquitted of all charges or some of the charges, and whether the "judgments as a whole reflected Plaintiff's innocence." *See Kossler*, 564 F.3d at 188. Based on the seemingly contradictory information and lack of factual allegations as to the exact crimes he was charged with and the disposition of those charges, the Court must dismiss this claim *without prejudice* at this time.[6]

---

[6] The Court interprets Plaintiff's allegations to attempt to state a malicious prosecution claim against all defendants other than John Doe's 1-2. To the extent that is not correct, Plaintiff is advised to explicitly state such in any second amended complaint.

**III. CONCLUSION**

For the foregoing reasons, the Amended Complaint will be dismissed *without prejudice* in its entirety pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim upon which relief may be granted. Because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file a second amended complaint.[7] An appropriate Order follows.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[7] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases); *see also* 6 CHARLES ALAN WRIGHT ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*